918 F.2d 978
 287 U.S.App.D.C. 38
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
AMERICAN RADIO RELAY LEAGUE, Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and the United States of
America, Respondents,
United Parcel Service, Inc., SEA, Inc., Utilities
Telecommunications Council, Association of American
Railroads, Waterway Communications System, Inc., Special
Industrial Radio Service Association, Inc., Land Mobile
Communications Council, Associated Public-Safety
Communications Officers, Inc., Intervenors.
 No. 89-1602.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 3, 1990.
 
 Before HARRY T. EDWARDS, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on to be heard on a petition for review of an order of the Federal Communications Commission, and was briefed and argued by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the Court. See D.C.Cir.R. 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by this Court, that the petition for review of the order of the Federal Communications Commission is hereby denied for the reasons set forth in the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this Court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 4
 This is a challenge to a decision of the Federal Communications Commission (FCC or Commission) allocating frequencies on the electromagnetic spectrum. The FCC awarded the 220-222 Megahertz (MHz) band to land mobile users. We find that the Commission acted within its discretion and deny the petition for review.
 
 I.
 
 5
 For several years the Commission allocated the entire 220-225 MHz band to radio amateurs on a co-equal basis with government users and land services. Since the latter groups did not actually use the band, the amateurs enjoyed a de facto exclusive use of the 220-225 MHz band. In 1987, the Commission instituted an informal rulemaking directed toward possible reallocation of this part of the spectrum and eventually determined that the "public convenience, interest, or necessity" standard of 47 U.S.C. Sec. 303, which provides the substantive standard for the FCC action, would be best served by allocating three MHz of the spectrum (222-225 MHz) for the exclusive use of the amateur radio operators and two MHz (220-222 MHz) for the exclusive use of the narrow band land mobile users.[1] Report and Order in re Amendment of Part 2 of the Commission's Rules Regarding the Allocation of the 216-225 MHz Band, 3 F.C.C. Rcd. 5287 (1988), recon. denied, 4 F.C.C. Rcd. 6407 (1989). The American Radio Relay League (ARRL or petitioner), representing the amateurs, attacks this decision of the Commission. It challenges three premises of the Commission's decision: the findings about the current use by the amateurs of the 220-222 MHz frequencies, the need of the land mobile communication systems users who are developing narrow band technologies to use these frequencies, and the value attached by the Commission to competing uses. We examine each of these contentions in turn.
 
 II.
 
 6
 Petitioner's first contention is that the FCC underestimated amateur use. The principal current users of the 220-225 MHz frequencies are packet stations, repeaters, control links, and various experimental operations.[2] The Commission determined that most of the repeaters are in the 222-225 range and that other amateur users could move to either 222-225 MHz or to the other parts of the spectrum reserved for the amateurs, especially if the amateurs employ means for minimizing spectrum usage such as sharing control links. Petitioner claims that the FCC ignored the possibility that more amateurs actually use the frequencies than the Commission believed. In particular, petitioner attacks the Commission's conclusion that packet station usage is light in the 220-222 MHz band as based on inadequate information. We believe the FCC acted on the basis of all information available to it about the extent and the nature of amateur use on 220-222 MHz and it reasonably considered the difficulties involved in the amateurs' relocation to different bands and, therefore, reject this contention.
 
 
 7
 It is important to recognize that the Commission does not regulate amateurs beyond issuing general licenses and, therefore, cannot know the extent of amateurs' use of different frequencies unless voluntary amateur organizations, such as the ARRL, provide data about the extent of amateurs' use. In this case, the Commission relied on the Repeater Directory published by petitioner and on petitioner's research to estimate the number of users. Ironically, the ARRL now claims that its own information was inadequate and does not represent the full extent of amateur use. But we cannot fault the Commission for its reliance upon the information that petitioner itself submitted.
 
 
 8
 Petitioner also challenges the FCC's determination that the users to whom the 220-222 MHz band will be reserved under the new rule--land mobile communications systems using narrow band technology--should receive these bands. Petitioner claims that the Commission's prior decision precludes new spectrum allocations to land mobile users, see Amendment of the Rules to Allocate Additional Channels in the Band 470-512 MHz for Public Safety and Other Land Mobile Services, 51 Fed.Reg. 4352 (1986). The Commission in that decision accompanied the allocation of additional spectrum space for the Los Angeles sheriff's office by a strong warning that the allocation was due to the public safety needs of this particular land mobile user and that in the future land mobile communication systems should handle increasing demands for services through more efficient transmission technologies. Id. at 4359. To be sure, it appears that the Commission would generally prefer to avoid new allocations and to look instead to technological solutions that would allow more parties to use the same frequency, but its preferences hardly rise to the level of a settled policy.
 
 
 9
 In any event, the FCC adequately explained why, in the case before us, an allocation to the land mobile users was desirable. The Commission believed that spectrum efficient technologies will be essential in addressing this country's future land mobile requirements and, therefore, wants to encourage these users to develop narrow band technologies. In the Commission's view, to which we are obliged to give great deference, see National Ass'n of Broadcasters v. FCC, 740 F.2d 1190, 1211-1214 (D.C.Cir.1984), the obstacles to the development of narrow band technologies in the parts of the spectrum currently allocated to the land mobile systems are too great. The Commission believes that only in the part of the spectrum currently unoccupied by the wide band users can narrow band technologies be developed to the point that would allow their subsequent use at all frequencies.
 
 
 10
 Finally, petitioner takes issue with the FCC's determination as to the value of narrow band technologies and their potential for obviating spectrum shortages. But it is preeminently the Commission's task to balance the respective uses to which the wavelengths can be dedicated. We must defer to the Commission's reasonable assessment of the probable future success and importance of technological developments. See Telocator Network v. FCC, 691 F.2d 525, 543-44 (D.C.Cir.1982). These determinations are based on a close acquaintance with the technical, economic and other aspects of the competing technologies, and we cannot say that the Commission did not arrive at a reasoned decision about the best way to advance the "public convenience, interest, or necessity."
 
 
 
 [1]
 Land mobile services are "radio communication services, based on land, where either the transmitting or receiving station is mobile." National Ass'n of Regulatory Utility Comm'rs v. FCC, 525 F.2d 630, 634 (D.C.Cir.), cert. denied, 425 U.S. 992 (1976). They include taxicabs, delivery and paging services, as well as public safety services
 
 
 [2]
 The precise details of these technologies need not detain us. The FCC decision does not hinge upon their technical characteristics but merely upon the extent to which they can be accommodated in other parts of the spectrum